IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Frenchis Gerald Abraham, | ) | |
| | ) | Civil Action No. 6:14-1844-RMG-KFM |
| Plaintiff, | ) | |
| | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Lt. Brayboy, Lt. Cedric June, | ) | |
| Ofc. Xavier Burroughs, Cpl. Frank | ) | |
| Hickman, Ofc. J. Remond, Ofc. J. Barr, | ) | |
| Sgt. Keith McBride, Ofc. Jennifer | ) | |
| Macaulay, Ofc. K. King, Ofc. Finnley, | ) | |
| LPN Courtney Dixon, Sgt. Martha | ) | |
| Ramsay, Lt. Francis Bowman, | ) | |
| Ofc. R. Cain, Ofc. Gerline Johnson, | ) | |
| Cpl. P. Bells, Ofc. Atkinson, and | ) | |
| Sgt. Daniel Cain, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on the defendants' second motion for summary judgment (doc. 62). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d)(D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

## BACKGROUND

The plaintiff is currently incarcerated at Broad River Correctional Institution in the South Carolina Department of Corrections ("SCDC"). The plaintiff filed a complaint claiming that his constitutional rights were violated while he was incarcerated at Lee Correctional Institution ("LCI"). Specifically, he alleges that multiple named defendants used excessive force against him on or about May 25, 2012; that multiple defendants were

deliberately indifferent to his serious medical needs; and that multiple defendants subjected him to unconstitutional conditions of confinement while he was incarcerated at LCI. At the time of the events alleged in the complaint, the defendants were all employees of the SCDC.

On May 12, 2014, the plaintiff filed his complaint (doc. 1). In an order filed that same date, the undersigned directed the plaintiff to bring the case into proper form by paying the filing fee if he was not indigent or by filing a motion for leave to proceed *in forma pauperis* if he was indigent (doc. 6). The plaintiff paid the full filing fee on June 9, 2014 (doc. 9). On June 10, 2014, the court issued an order (doc. 13) directing the Clerk of Court to issue the summonses and to forward copies of the summonses and complaint to the plaintiff. In that order, the undersigned emphasized that the "**plaintiff is responsible for service of process**" within 120 days of the date on which the summonses issued (doc. 13 at 2 (emphasis in original)). The summonses were issued by the Clerk of Court on June 10, 2014 (doc. 14). Service was due by October 14, 2014 (doc. 14).

On October 21, 2014, the defendants filed an answer that included an affirmative defense that the plaintiff had failed to serve all captioned defendants and that any defendants not properly served with the summons and complaint were entitled to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(5) (doc. 19). On April 24, 2015, the defendants filed a motion for summary judgment (doc. 29), arguing that the case should be dismissed for lack of service. By order filed the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), the plaintiff was advised of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately (doc. 32). The plaintiff filed his response in opposition on June 1, 2015 (doc. 34). The plaintiff included as an exhibit the affidavits of service from John Adams, Process Server, stating that defendants Barr, Redmond, McBride, Dixon, Johnson, Atkinson, Burroughs, Sgt. Daniel Cain, and Ramsey were timely served on October 2, 2014, by John Adams & Associates (doc. 34-2). On June 9, 2015, the undersigned recommended denial of the first motion for summary judgment and extension of the plaintiff's time for service of the

2

complaint under Rule 4(m) (doc. 39). The undersigned further directed the defendants to respond to the plaintiff's discovery requests, which requested addresses for defendants Bells, Brayboy, Hickman, Bowman, June, Macaulay, King, Ofc. R. Cain, and Finnley, on or before June 16, 2015 (*id.*). The undersigned further recommended that the defendants be given an opportunity to file a motion for summary judgment addressing the merits of the plaintiff's claims and renewing the motion to dismiss for insufficient service of process should the plaintiff fail to timely serve any of the unserved defendants (*id.*). Because of confidentiality concerns with providing the home addresses of current or former SCDC employees to an inmate, defense counsel requested that the court issue an order providing for coordination between defense counsel and any process server hired by the plaintiff (doc. 41). On August 4, 2015, the undersigned issued an order requiring the plaintiff to file the name of a process server on or before August 17, 2015, so that the remaining defendants could be served (doc. 47). The plaintiff moved for an extension of time to provide this information (doc. 50), which this court granted through August 31, 2015 (doc. 52). The plaintiff identified the process server in a filing on September 8, 2015 (doc. 57).

The defendants filed a second motion for summary judgment on September 21, 2015 (doc. 62). A *Roseboro* order was issued on September 22, 2015, advising the plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately (doc. 63). After requesting and receiving an extension of time to file his response, the plaintiff failed to file his response by the November 10, 2015, deadline. The undersigned issued an order giving the plaintiff through December 2, 2015, to file his response and explaining that if he failed to respond, the action would be subject to dismissal for failure to prosecute (doc. 70). On November 20, 2015, the plaintiff filed his response in opposition (doc. 73) along with his declaration (doc. 74).

On March 1, 2016, the Honorable Richard M. Gergel, United States District Judge, issued an order denying the defendants' first motion for summary judgment as moot (doc. 77).

Based upon the foregoing, the defendants' second motion for summary judgment is ripe for the court's consideration.

## PLAINTIFF'S ALLEGATIONS

In this action, the plaintiff alleges:

> [T]he use of "excessive force" by prison guards, where he was kicked, dragged, and clubbed by prison guards while in restraints, the "deliberate indifference" to his serious medical needs by prison guards and medical officials, where he was left unresponsive on cell's floor for approximately one and a half hours without receiving medical care, and the 'deliberate indifference' to his conditions of confinement by prison guards, where he was placed under control-cell conditions, naked, and without a mattress, for approximately four days after returning from the Emergency Room ("ER"), violated his Eighth Amendment constitutional right against cruel and unusual punishment.

(Doc. 1 at 7, comp.). The plaintiff alleges that defendants Brayboy, June, and D. Cain kicked, dragged, and clubbed him; that defendants Brayboy, June, D. Cain, Hickman, Barr, Redmond, McBride, Macaulay, King, Burroughs, Finnley, Bowman, Bells, Atkinson, and Dixon observed him laying unresponsive and unmoving on cell's floor and were deliberately indifferent to his serious medical needs, leaving him lying on the floor for approximately 1.5 hours without ensuring he received medical attention, causing his pain and suffering to be prolonged unnecessarily; and that defendants Ramsey, Bowman, R. Cain, and Johnson observed the plaintiff in a cell without a mattress between the dates of May 26, 2012, and May 28, 2012, were aware of the May 25, 2012 incident, and refused to provide him with a mattress and a shower to rinse chemical munitions from his body, exacerbating the plaintiff's pain and suffering (*id.* at 4-9). He seeks compensatory and punitive damages (*id.* at 10).

## APPLICABLE LAW AND ANALYSIS

### *Standard of Review*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that

4

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### Insufficient Service of Process

The defendants first argue that, as of the filing of their second motion for summary judgment, defendants Brayboy, June, Hickman, Macaulay, King, Burroughs, Finnley, Bowman, Bells, and R. Cain still have not been properly served by the plaintiff with a summons and complaint. Therefore, they move for dismissal of these defendants pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process (doc. 62-1 at 4-5).

At the time of the filing of the plaintiff's complaint[1], Rule 4(m) provided that a plaintiff must serve a defendant "within 120 days after the complaint is filed." Fed. R. Civ. P. 4(m) (2014). If a defendant is not served within that time, "the court ... must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id*. "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id*. The plaintiff paid the filing fee (doc. 9). Accordingly, he is responsible for service of process on the defendants as has been repeatedly stated by the court in previous orders (*see* docs. 13, 39, 47). Summonses were issued on June 10, 2014, and the 120-day period for service of process was calculated from the date on which the summonses were issued. *Robinson v. Clipse*, 602 F.3d 605, 608–09 (4th Cir. 2010) (tolling during initial review). According to the docket in this case, service was due by October 14, 2014 (doc. 14).

The plaintiff timely served defendants Barr, Redmond, McBride, Dixon, Johnson, Atkinson, Burroughs, Sgt. Daniel Cain, and Ramsey on October 2, 2014 (doc. 34-2). Accordingly, the defendants are mistaken in their argument (doc. 62-1 at 4-5) that defendant Burroughs is one of the defendants whom the plaintiff has failed to properly serve (*see* doc. 34-2 at 9).

As discussed in detail above, the undersigned recommended on June 9, 2015, that the plaintiff's time period for service of the above-named defendants be extended (doc. 39). Pursuant to this court's request, on September 8, 2015, the plaintiff identified the process server he had hired to serve the unserved defendants as John Adams & Associates in Elgin, South Carolina, who is the same process server the plaintiff used to serve the other defendants (doc. 57). Over ten months have now passed, and the plaintiff has failed to file with the court an affidavit of service showing that any of the unserved defendants (Brayboy, June, Hickman, Macaulay, King, Finnley, Bowman, Bells, and R.

---

[1]The rule was amended in 2015 to provide that a defendant must be served within 90 days of the filing of the complaint. Fed. R. Civ. P. 4(m) (2016).

Cain) have been served. *See* Fed. R. Civ. P. 4(l)(1) ("Proving Service. Affidavit Required. Unless service is waived, proof of service must be made to the court. Except for service by a United States marshal or deputy marshal, proof must be by the server's affidavit.").

In his response in opposition to the motion for summary judgment, the plaintiff argues that he was late in filing the name of the process server due to delays by the SCDC mailroom staff and because of the defendants' refusal to provide last known addresses for the unserved defendants (doc. 73-1 at 4). The court addressed the last known address issue in previous orders, and, as the plaintiff is well aware, he is responsible for service of the summons and complaint on each defendant (*see* docs. 13, 39, 47). The plaintiff was also aware that he should direct the process server to contact defense counsel to coordinate service on the defendants for whom counsel had contact information (doc. 47). The plaintiff has provided no evidence that he has made any effort to serve the unserved defendants in this case, and the case is now over two years old. As no reason exists to further extend the time period for service, the undersigned recommends that defendants Brayboy, June, Hickman, Macaulay, King, Finnley, Bowman, Bells, and R. Cain be dismissed from this action pursuant to Rule 12(b)(5). The undersigned further recommends that the motion to dismiss pursuant to Rule 12(b)(5) be denied as to defendant Burroughs as he has been properly served (*see* doc. 34-2 at 9).

### *Excessive Force*

The plaintiff alleges a claim of excessive force against defendants Brayboy, June, and D. Cain (doc. 1 at 8, comp.). Specifically, the plaintiff alleges that on May 25, 2012, the SCDC's Agency Search Team ("AST") and Rapid Response Team ("RRT") conducted a cell-to-cell search of the North Wing of the Special Management Unit ("SMU") at LCI. The plaintiff alleges that he was told to back up to the food-service flap to be handcuffed, but that, instead of complying, he asked to speak to a supervisor because he had a case pending in court and did not want to have his legal documents confiscated. He claims that defendant Brayboy told him "you ain't talking to nobody" and pointed a cannister of chemical munitions toward the plaintiff through the open food-service flap. The plaintiff

states that he "refused to move until he spoke to the supervisor," at which time defendant Brayboy administered "several bursts of chemical munitions" into the plaintiff's facial area. The plaintiff grabbed a towel and wrapped it around his face (*id.* at 5).

The plaintiff alleges that defendant Burroughs asked the plaintiff to comply "because he knew he was sick." Defendant Burroughs then informed the other officers that the plaintiff had recently returned from surgery.[2] The plaintiff alleges that defendant Brayboy said, "he already hurt and he want to buck," and administered "several more bursts of chemical munitions" to the plaintiff's face and upper body area (*id.*).

The plaintiff alleges that members of the RRT, including defendants D. Cain, Brayboy, and June, entered his cell. He claims that the defendants lifted him from the floor and "slammed" him back down on the floor face first. He claims that "a heavy foot" was placed on his head and another in the center of his back. He claims his arms were pulled back as he was handcuffed. The plaintiff alleges that defendant Brayboy stated, "you want to be hard," and the plaintiff was "kicked and stomped on from several directions." The plaintiff further alleges that he was "yanked" up to his feet several times, that defendant June dragged him outside and placed him in a metal detector chair, and that defendant D. Cain cut the plaintiff's clothing away, leaving him naked (*id.* at 6).

The plaintiff further alleges that defendant June dragged him back inside the building and that defendant June clubbed the plaintiff in the groin area with a wooden club and began searching around the plaintiff's genitals. The plaintiff alleges that he was left lying in his cell in a puddle of chemical munitions (*id.*).

Eighth Amendment excessive force claims contain objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In order for the plaintiff to

---

[2] The plaintiff's spleen was removed by way of a hand-assisted laparoscopic surgical procedure on March 14, 2012, and he has filed two prior civil actions in this court relating to said medical condition (6:11-cv-00046-RMG and 6:13-cv-769-RMG). The first (6:11-cv-00046-RMG) action included claims of deliberate indifference to medical needs due to an alleged unreasonable delay in providing surgical repair of a splenic cyst. The second action (6:13-cv-769 -RMG) included claims of unconstitutional conditions of confinement relating to an alleged deprivation of a mattress for approximately 20 days following the plaintiff's return to LCI on March 23, 2012, after the removal of his spleen.

prevail, he must demonstrate that (1) the "deprivation suffered or injury inflicted . . . was sufficiently serious," and (2) the "prison official acted with a sufficiently culpable state of mind." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir.1996). The United States Supreme Court has provided,

> Where a prison security measure is undertaken to resolve a disturbance . . . that indisputably poses significant risks to the safety of the inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."

*Whitley v. Albers*, 475 U.S. 312, 320 (1986) (citations omitted).   Several factors are considered when evaluating the subjective component:

> [1] the need for the application of force, [2] the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted . . . [3] the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and [4] any efforts made to temper the severity of a forceful response.

*Id*. at 320-21; *see Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996) (where the Fourth Circuit used the *Whitley* elements as factors to be evaluated regarding the subjective component).  "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation . . . ." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (quoting *Whitley*, 475 U.S. at 321).

Use of chemical munitions on prisoners may or may not constitute excessive force, and the *Whitley* factors depend on the circumstances surrounding the application of the chemical munitions and any treatment and decontamination following. *See Williams*, 77 F.3d at 762 (use of mace justifiable under first *Whitley* factor where Plaintiff "refused to obey the command" to stop throwing liquids)*; cf. Tedder v. Johnson*, 527 F. App'x 269,

272–73 (4th Cir.2013) (overturning grant of summary judgment where, among other things, there was a dispute of fact as to whether Plaintiff was willing to comply with Defendant's commands at the time mace was used). Under the Fourth *Whitley* factor, the court notes that a "limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate." *Williams*, 77 F.3d at 763 (internal quotations omitted). "[B]ecause a limited use of mace constitutes a relatively 'mild' response compared to other forms of force, the initial application of mace indicates a 'tempered' response by the prison officials." *Id*. ("[I]t is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain."); *cf. Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir.2008) (affirming denial of summary judgment where Defendant "deployed several additional bursts of pepper spray even after [Plaintiff] attempted to comply with orders"). Courts have found that the question of whether a prisoner was sufficiently decontaminated following the use of pepper spray or mace is "a significant factor in upholding the use of mace." *Williams*, 77 F.3d at 764 n.4 (citing *Soto v. Dickey*, 744 F.2d 1260, 1266 (7th Cir.1984)); *see also Mann v. Failey*, 578 F. App'x 267, 273 (4th Cir.2014) ("We have previously held that the denial of decontamination can give rise to an Eighth Amendment claim.").

The claim of excessive force is alleged against defendants Brayboy, June, and D. Cain (doc. 1 at 8, comp.). As, discussed above, the plaintiff has failed to serve either defendant Brayboy or June with the summons and complaint, and the undersigned recommends their dismissal from this action on that basis. The defendants have only addressed the claim against D. Cain on the merits, and, therefore, the undersigned will do the same.

In his complaint, the only specific allegation made against defendant D. Cain is that he cut away the plaintiff's clothing during the search (*id.* at 6). However, in support of his response in opposition to the motion for summary judgment, the plaintiff submitted

a declaration in which he states that defendant D. Cain, along with defendants Brayboy and June, "kicked and stomped [him] repeatedly for no reason" while he "was restrained on the floor in handcuffs and not resisting" (doc. 74, pl. decl. ¶ 4).[3] The plaintiff further alleges in both his complaint and affidavit that defendant D. Cain, along with other defendants, knew that he was recovering from surgery and observed him laying unresponsive and unmoving on the floor of his cell for approximately 1.5 hours without providing him medical attention (doc. 1 at 8, comp.; doc. 74, pl. decl. ¶ 4).

The defendants have submitted the affidavit of Lt. Ben Freng, the records custodian at LCI (doc. 62-2, Freng aff.). In that affidavit,. Lt. Freng references a collection of LCI documents relating to the May 25, 2012, incident at issue in this case. As noted by the defendants, the Report on the Use of Force and Incident Report from the May 25, 2012 incident do not mention defendant D. Cain (*id.* at 3-4, Freng aff., ex. A). Both documents state that chemical munitions were used on the plaintiff only after the plaintiff "refused all directives" to back up to the food-service flap to be handcuffed (*id.*). The documents further state that, after the chemical munitions were used, the plaintiff "complied with all other directives" and was seen by defendant LPN Courtney Dixon, with no injuries noted (*id.*). Neither document references any physical altercation between the plaintiff and the defendants (*id.*).

The defendants have also submitted the affidavit of Gwendolyn Stokes, R.N., who serves as the Healthcare Authority at LCI (doc. 62-3, Stokes aff.). In her affidavit, Nurse Stokes references the plaintiff's medical records, which are attached to her affidavit (*id.* ¶ 8 & ex. A). Nurse Stokes notes that Encounter 220 details the events following the use of chemical munitions on the plaintiff prior to a forced cell movement on May 25, 2012

---

[3]The plaintiff stated above his signature, "I declare under the penalty of perjury that the foregoing is true and correct" (doc. 74 at 2, pl. decl.). Accordingly, the undersigned has considered the declaration to have the same effect as an affidavit, pursuant to 28 U.S.C. § 1746.

(*id.* ¶ 8 & ex. A at enc. 220).  The medical record indicates that at approximately 5:00 p.m., defendant Licensed Nurse Practitioner ("LPN") Courtney Dixon observed the plaintiff standing in his cell with a towel wrapped around his face (*id.*).  She watched the officers strip the plaintiff outside and then bring him back to his cell.  She then observed the plaintiff lying on the floor with his back turned, with even and nonlabored respirations.  She could not see the plaintiff's face (*id.*).  The record further indicates that LPN Dixon returned to the plaintiff's cell at approximately 6:25 p.m. to "reevaluate [the plaintiff] as he would not respond immediately after the incident" (*id.* & ex. A at enc. 222).  The plaintiff was still lying on the floor and had not changed positions (*id.*).  LPN Dixon states that the plaintiff was placed in a wheelchair to take him to medical for further assessment (*id.*).  The plaintiff was not responding verbally, and the evaluating nurses were unable to assess his bowel sounds due to abdominal rigidity (*id.* ¶ 9 & ex. A at enc. 220).  Nurse Practitioner Holcomb was notified of the plaintiff's condition and ordered that the plaintiff be transported to the emergency room for further evaluation in light of his recent abdominal surgery (*id.*).  The plaintiff was transported to the emergency room at Palmetto Richland Hospital for further evaluation of his abdominal issues, and he returned to LCI during the early morning hours of May 26, 2012, with no physician orders and no complaints (*id.* ¶¶ 10-11 & ex. A at enc. 221).  The plaintiff complained of abdominal pain during the evening of May 26, 2012, and it was noted that his Miralax had recently been discontinued and medical personnel advised the security staff that the plaintiff could have Milk of Magnesia for any further complaints of constipation and that he had a surgery clinic follow-up appointment on May 31, 2012 (*id.* at ¶12 & ex. A at enc. 226).  Nurse Stokes also states that Exhibit B to her affidavit, a copy of the note from the plaintiff's surgery clinic follow-up visit of May 31, 2012, indicates that the plaintiff was doing well, that his abdomen was soft and appropriate, and that his incision sites were well healed (*id.* at ¶13 & ex. B).

"Satisfying the objective component in the context of an excessive force claim demands only that the force used be 'nontrivial.'" *Servidio v. Pittman*, 632 F. App'x 747, 749 (4th Cir. 2015) (quoting *Wilkins*, 559 U.S. at 39). According to the version of the events stated by the plaintiff in his declaration and supported at least in part by his medical records, and viewing the evidence in a light most favorable to the plaintiff, the force used was not trivial. In evaluating the subjective component, the court must consider the *Whitley* factors. *Whitley*, 475 U.S. at 320-21. With regard to the "need for application of force," the plaintiff admits that he refused a direct order from LCI officers to back up to the food-service flap to be handcuffed. While the initial force may well have been simply for the purpose of detaining the plaintiff for the purpose of preventing any safety or security issues and maintaining order while officers searched the plaintiff's cell, genuine issues of material fact remain as to the defendants' actions. As set forth above, the plaintiff claims that defendant D. Cain, along with defendants Brayboy and June, proceeded to kick him while he was restrained on the floor in handcuffs after the chemical munitions were used on him. With respect to the second *Whitley* factor, the "relationship between the need and the amount of force that was used, and the extent of the injury inflicted," a jury could find that the defendants continued to apply force against the plaintiff well after the plaintiff ceased his resistance. Specifically, the defendants' evidence states that, following the use of chemical munitions, the plaintiff thereafter "complied with all other directives" (doc. 62-2, Freng aff., ex. A). With regard to the third *Whitley* factor, the "extent of the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis on the facts known to them," again issues of material fact remain as the plaintiff states in his affidavit that the defendants, including D. Cain, kicked and stomped him while he was on the floor restrained in handcuffs. Finally, in evaluating the fourth *Whitley* factor, "any efforts made to temper the severity of a forceful response," the plaintiff attests that he was left on the floor for approximately 1.5 hours without medical care. The medical record submitted by the defendant actually supports the plaintiff's claim (*see* doc. 62-3, Stokes aff. ex. A at enc. 220

13

& 222).  Moreover, the plaintiff claims that during the 1.5 hours that he was left on the floor in his cell, he was lying on the floor "in a puddle of chemical munitions," and he was not given a chance to rinse the chemical munitions from his body for the next several days (doc. 1 at 6-7).

Based upon the foregoing, the district court should deny the motion for summary judgment on the excessive force claim against defendant D. Cain.  Should the district court find that defendants Brayboy and June should not be dismissed from this action based upon the plaintiff's failure to properly serve them, summary judgment should also be denied on the excessive force claim against them.

### Deliberate Indifference to Serious Medical Needs

The plaintiff claims that he was left unresponsive on the floor of his cell for approximately 1.5 hours without receiving medical care, that he was placed in control cell conditions, naked, without a shower, and without a mattress, for approximately four days after returning from the emergency room, and that these allegations constitute deliberate indifference to his medical needs (doc. 1 at 4, comp.).  The plaintiff alleges this claim against defendants Brayboy, June, D. Cain, Hickman, Barr, Redmond, McBride, Macaulay, King, Burroughs, Finnley, Bowman, Bells, Atkinson, and Dixon (doc. 1 at 8, comp.).   As discussed above, the plaintiff has failed to serve defendants Brayboy, June, Hickman, Macaulay, King, Finnley, Bowman, and Bells with the summons and complaint, and the undersigned recommends their dismissal from this action on that basis.  Accordingly, should the district court adopt that recommendation, the plaintiff can proceed on this claim, if at all, against defendants D. Cain, Barr, Redmond, McBride, Burroughs, Atkinson, and LPN Dixon only.

In *Estelle v. Gamble*, the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "'involve the unnecessary and wanton infliction of pain.'" 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976)).  The Court stated:

14

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> ***
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," . . . proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103-05 (citations and footnotes omitted).    Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the Court was careful to note however that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation. *Id.*

The Court of Appeals for the Fourth Circuit also considered this issue in *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience to or be intolerable to fundamental fairness (citations omitted) . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id*. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle,* 429 U.S. at 104; *Farmer v. Brennan*, 511 U.S. 825 (1994).

"A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir.2010) (vacating and remanding summary dismissal of complaint alleging three-month delay in dental treatment); *see Smith v. Smith*, 589 F.3d 736, 738–39 (4th Cir.2009) (finding claim of delay in administering prescribed medical treatment stated an Eighth Amendment claim).

15

Here, viewing the evidence in a light most favorable to the plaintiff, the defendants left the plaintiff lying on the floor of his cell for at least 1.5 hours after he was stomped, kicked, and clubbed by defendants Brayboy, June, and D. Cain. The plaintiff also contends these defendants knew that he recently had surgery from which he was still recovering (*see* doc. 74, pl. decl. ¶ 7; doc. 62-3, Stokes aff. ¶ 7 & ex. A at enc. 201 ("Plaintiff returned to Lee from Kirland Infirmary on March 23, 2012, following a recent splenectomy procedure")). Moreover, the evidence shows that LPN Dixon viewed the plaintiff on the floor of his cell and returned 1.5 hours later because "he would not respond immediately after the incident" (*id.* ex. A at enc. 222). The plaintiff was still lying on the floor and had not changed positions (*id.*). LPN Dixon states that the plaintiff was placed in a wheelchair to take him to medical for further assessment, the plaintiff was not responding verbally, and the evaluating nurses were unable to assess his bowel sounds due to abdominal rigidness (*id.* ¶ 9 & ex. A at enc. 220). The plaintiff was then transported to the emergency room and returned early the next morning (*id.*). While the defendants dispute that the plaintiff suffered from a serious medical condition, the plaintiff states in his declaration that, as a result fo the defendants' actions and inactions, he suffered "unnecessary and prolonged chronic pain . . . that affected his daily activities" (doc. 74, pl. decl. ¶ 10).

Based upon the foregoing, the undersigned finds that issues of material fact remain on the plaintiff's claim of deliberate indifference to serious medical needs. Accordingly, summary judgment should be denied as to this claim against defendants D. Cain, Barr, Redmond, McBride, Burroughs, Atkinson, and LPN Dixon. Should the district court find that defendants Brayboy, June, Hickman, Macaulay, King, Finnley, Bowman, and Bells should not be dismissed from this action based upon the plaintiff's failure to properly serve them, summary judgment should also be denied on the deliberate indifference to serious medical needs claim against them.

16

### *Conditions of Confinement*

Lastly, the plaintiff alleges an Eighth Amendment conditions of confinement claim against defendants Ramsey, Bowman, R. Cain, and Johnson (doc. 1 at 8-9, comp.). Specifically, the plaintiff claims that defendant Ramsey accompanied him to the emergency room and, upon his return to the facility at approximately 3:30 a.m. the next morning, he found that his mattress had been removed from his cell (*id.* at 7). He claims that he requested a mattress, and Ramsey refused (*id.*). He also requested a shower to rinse the chemical munitions from his body, and Ramsey refused (*id.*). The plaintiff alleges that in the following days, he requested a mattress and a shower and was refused by defendants Bowman, R. Cain, and Johnson (*id.*). The plaintiff states in his affidavit that these defendants denied him access to a mattress and shower for four days while being aware of the incident and of his physical condition (doc. 74, pl. decl. ¶ 9). The plaintiff claims that as a result of these defendants' actions and inactions he "remained sore and stiff for several days/months" and "suffered unnecessary and prolonged chronic pain and suffering that affected his daily activities" along with "mental and emotional distress" (*id.* ¶ 10; *see* doc. 1 at 8, comp.).

As discussed above, the plaintiff has failed to serve defendants Bowman and R. Cain with the summons and complaint, and the undersigned recommends their dismissal from this action on that basis. Accordingly, should the district court adopt that recommendation, the plaintiff can proceed on this claim, if at all, against defendants Ramsey and Johnson only.

To prevail on an Eighth Amendment Claim, a prisoner must prove (1) that "the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)" and (2) that "the prison official acted with a sufficiently culpable state of mind (subjective component)." *E.g., Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir.1996). With regard to a conditions of confinement claim, an inmate must "prove extreme deprivations of basic human needs or serious or significant pain or injury." *Smith v. Ozmint*, 578 F.3d 246, 255 (4th Cir.2009) (quotations omitted); *see also Hudson v. McMillian*, 503 U.S. 1, 9

(1992) ("Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society ... only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."). "[I]n order to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1380 (4th Cir. 1993). "The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments. If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment . . . ." *Id.*

The Court of Appeals for the Fourth Circuit has "previously held that the denial of decontamination can give rise to an Eighth Amendment claim." *Mann*, 578 F. App'x at 273 (citing *Williams*, 77 F.3d at 768). Here, the evidence, viewed in a light most favorable to the plaintiff, demonstrates that the plaintiff was in pain for several days while the defendants refused to allow him to decontaminate. Further, the defendants have provided no reason for the defendants' refusal to allow the plaintiff to take a shower or have a mattress for four days following the incident at issue here. In *Mann*, the Fourth Circuit stated as follows, "[The plaintiff] has sworn that after being sprayed, he repeatedly asked officers and medical staff for a shower, was denied, and experienced burning pain over his body for five days; a reasonable jury could infer from this evidence that [the plaintiff] has adequately established both the subjective and objective prongs of his Eighth Amendment claim." *Id.* at 274. Likewise, here, the undersigned finds that denial of summary judgment is appropriate on this claim. Should the district court find that defendants Bowman and R. Cain should not be dismissed from this action based upon the plaintiff's failure to properly serve them, summary judgment should also be denied on the conditions of confinement claim against them.

### *Qualified Immunity*

The defendants further argue that they are entitled to qualified immunity (doc. 62-1 at 26-29). Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*. Where, as here, material factual disputes exist regarding the conduct of the defendants, summary judgment on qualified immunity is improper. *Vathekan v. Prince George County*, 154 F.3d 173, 179-80 (4th Cir.1998).

### *Eleventh Amendment Immunity*

The defendants also argue that they are entitled to Eleventh Amendment immunity in their official capacities from the plaintiff's claims for monetary damages. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir.1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* The defendants are employees of SCDC. As a result, the defendants are entitled to Eleventh Amendment immunity to the extent the plaintiff has alleged claims for monetary relief against them in their official capacities.

19

## CONCLUSION AND RECOMMENDATION

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' second motion for summary judgment (doc. 62) be granted in part and denied in part as set forth above.

IT IS SO RECOMMENDED.

s /Kevin F. McDonald
United States Magistrate Judge

July 29, 2016
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
300 East Washington Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).